[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
CORRECTED MEMORANDUM OF DECISION
The parties intermarried on June 8, 1980 at Bridgeport, Connecticut. They have resided continuously in this state since that time. There are no minor children issue of the marriage.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in § 46b-80 and § 46b-82 of the Conn. General Statutes in reaching the decisions reflected in the orders that follow.
The parties have been married for approximately 16 years. The CT Page 604 plaintiff is 45 years of age. In March 1986 the plaintiff hurt her back while at work and she has not worked since that time. The plaintiff has a severe degenerative disc disease. In 1988 she had surgery to her back, which was unsuccessful. Her activities are restricted; she cannot sit or stand for long periods of time. She has seen several doctors, including unsuccessful treatment at the Yale Center for Pain Management. She is presently seeing a chiropractor for treatments including electrical stimulation to alleviate pain.
The plaintiff presently has carpal tunnel in both hands and surgery is planned for the right hand within a short period of time. She has a variety of other health problems including varicose veins and high blood cholesterol.
The plaintiff was examined at the request of the defendant, by Dr. MacEllis Glass, an orthopedic surgeon. Dr. Glass was called as a witness by the plaintiff. Dr. Glass indicated the plaintiff's degenerative lumbo-sacral disease which causes pain and stiffness is a permanent defect.
The plaintiff was offered a second back operation which she rejected. Dr. Glass indicated that there was no guarantee a second operation would be successful. In view of the plaintiff's hyperactive sensitivity to pain, she might not have a good result from a second operation.
The plaintiff is able to drive, shop and perform limited household duties provided she paces herself. Dr. Glass testified the plaintiff is disabled from performing any type of remunerative activity, except for sedentary work that she could perform at home, such as telemarketing.
The plaintiff applied for Social Security disability in 1988. She was awarded Social Security disability benefits of $563 per month retroactive to 1987. Social Security reviews the plaintiff's medical records every three years. Her last review was in 1994 and she is still receiving monthly disability benefits.
The plaintiff has medical coverage at a cost of $44 per month. Medicare does not cover her necessary drugs which would cost approximately $164 per month without insurance. COBRA coverage, which would provide 100% medical coverage, costs approximately $230 to $250 per month. CT Page 605
In 1993, the plaintiff settled her Worker's Compensation claim for a gross of $70,000. She was given a rating of 30% permanent disability of the back. The plaintiff received a net of $44,000. The plaintiff claims to have spent $25,000 of this amount on the marital home.
In 1992 the parties took out an equity loan of approximately $24,000. Approximately $12,000 was used for attorney's fees in connection with a custody proceeding involving the plaintiff's nephew.
The plaintiff had two children aged six and eight from a previous marriage when she married the defendant. The plaintiff received no child support from her former husband for these two children.
This is the third dissolution case the parties have instituted.
The defendant is 46 years of age. He is employed as an elevator mechanic servicing and repairing elevators and escalators.
The defendant has a degenerative knee problem. The defendant grosses approximately $57,325 per year plus overtime. His hourly rate of pay for overtime is $41.30 per hour. With overtime, the defendant earns approximately $65,000 per year.
The defendant claims the marriage broke down because of the plaintiff's violent temper, her jealousy and she favored her children over him. The plaintiff claims the defendant had an affair with another woman.
The defendant has a hobby of buying, restoring, refurbishing and selling motor vehicles and motor vehicle parts. The testimony as to whether the plaintiff made any profit or loss in his hobby was certainly convoluted. Throughout the marriage the defendant was involved in the buying, selling, repairing and restoring of at least 20 motor vehicles plus two trailers and a motorcycle. The defendant is presently restoring/refurbishing a 1964 Tempest. The parties agreed that there were at least $5443 in bills for this car. It would appear that large sums of money went into the defendant's hobby. CT Page 606
The parties purchased a home in Shelton after selling their first home. The defendant claims the down payment of $13,000 came from his Worker's Compensation settlement. The marital home has been appraised at $230,000 and $239,000. Both parties agree the home should be sold.
The main issues in this case are the award of alimony to the plaintiff and the division of the net proceeds of the sale of the marital home.
Unfortunately, the parties were unable to resolve their marital difficulties. The court declines to assess fault to either party for the breakdown of the marriage.
The court has considered all the statutory criteria in reaching the decisions reflected in the orders that follow:
REAL ESTATE
The marital residence located at 7 Lagana Lane, Shelton, Connecticut shall be placed on the market for an immediate sale. After the payments of the first mortgage, equity loan, real estate commission, attorneys' fees and usual closing costs, the net proceeds shall be divided 55% to the plaintiff and 45% to the defendant. Any needed repairs and maintenance required to put the house in saleable condition shall be divided in accordance with the parties respective share of the net proceeds.
The court shall retain jurisdiction over any disputes arising out of the sale of the real estate.
ALIMONY
1. Until such time as the marital home is sold, the defendant shall pay to the plaintiff as alimony the sum of $450 per week. The plaintiff shall be responsible to pay the mortgages, taxes and insurance until the marital home is sold.
2. Commencing one week after the sale of the real estate, the defendant shall pay to plaintiff as alimony the sum of $290 per week with a second look as to the term and amount of alimony ten years from date. Alimony shall terminate sooner on the death of the plaintiff, the death of the defendant, the plaintiff's remarriage or cohabitation as defined by statute, whichever event shall first occur. CT Page 607
PENSION
1. The plaintiff shall be entitled to 50% of the defendant's pension as of December 31, 1996, to be secured by means of a QDRO.
2. The plaintiff claims to have withdrawn any amounts she would have been entitled to from her pension plan at Chevron. In the event there are any funds remaining, they shall be the sole property of the plaintiff. In the event the plaintiff is entitled to any pension benefits from Chevron (her former employer) said benefits shall be considered at the time of the second look with respect to alimony.
HEALTH INSURANCE
1. The plaintiff shall be entitled to the COBRA benefits as are available through the defendant's employer. The defendant shall be responsible for one-half the cost of COBRA and the plaintiff shall be responsible for one-half until such time as the marital home is sold. Upon the sale of the marital home, the defendant shall be responsible for two-thirds of the cost of COBRA benefits and the plaintiff shall be responsible for one-third the cost of said benefits.
 A. Any unreimbursed medical expenses shall be the plaintiff's responsibility.
 B. The plaintiff shall be entitled to receive all necessary documents from the defendant's health benefit plan.
DEBTS
Each party shall be responsible for the debts as shown in their financial affidavits and shall hold the other harmless.
ATTORNEYS' FEES
Each party shall pay their respective attorney's fees.
PERSONAL PROPERTY
The parties shall divide their personal property as they CT Page 608 shall agree. If the parties are unable to agree, they are referred to Family Services for mediation. If mediation is unsuccessful, the parties shall return to court for a hearing thereon and appropriate orders.
IRA
The plaintiff shall be solely entitled to her IRA as stated on her financial affidavit.
LIFE INSURANCE
The defendant shall provide a policy of term life insurance on his life with the plaintiff named as irrevocable beneficiary for so long as he has an obligation to pay alimony. Said premium shall not exceed $400 per year. Said face value of the life insurance shall be $100,000 provided the premium does not exceed $400 per year.
This provision shall be modifiable.
MISCELLANEOUS
1. The 1991 Ford Thunderbird shall be the sole property of the plaintiff.
2. The 1964 Tempest race car and the 1990 Mazda MX6 motor vehicle shall be the sole property of the husband.
ARREARS
1. The defendant shall be responsible for the UI bill of $65.39.
2. The plaintiff shall be responsible for the telephone charges of $27.58.
Coppeto, J